UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

OGANNES B.,                                    :
         Plaintiff,                      :
                                   :
         v.                              :      C.A. No. 22-325WES
                                   :
KILOLO KIJAKAZI,                               :
Acting Commissioner of Social Security,        :
         Defendant.                     :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      Plaintiff Ogannes B. was born in Armenia, served in the Russian army in Afghanistan, finished high school, immigrated to the United States in the 1990s, brought over his wife and two children to join him in the 2000s and worked for many years as a power press operator. Fluent in Armenian and Russian, but with limited English, he suffers from post-traumatic stress disorder ("PTSD") from his war experiences and, for many years, abused alcohol, resulting in significant medical consequences, including chronic liver disease and cirrhosis. He also has gastroenterological issues, including an ulcer.

      In 2016, at the age of forty-eight, Plaintiff filed his first application for Disability Insurance Benefits ("DIB"), alleging liver issues, weight loss, back problems and abdominal pain, but was denied at the initial phase in June 2016. Tr. 111-12, 120. On December 8, 2017, while unemployed, Plaintiff was working on gutters and fell off a roof. Tr. 798. He lost consciousness, broke many left-side ribs and fractured parts of his thoracic and lumbar spine. Tr. 796-98. Despite the severity of these injuries, for the first twenty-four hours after the fall, Plaintiff declined medical attention and treated the pain with alcohol. Tr. 798. When he was taken to the hospital on the following day by a family member, his blood alcohol was .316. Tr.

796-98.  Due to the fall, Plaintiff was treated in a hospital for four days and in a rehabilitation facility for five more days; on discharge, he was found to still be suffering from "acute performance deficits."  Tr. 756, 821, 828-30.  In June 2018, Plaintiff was hospitalized again for six days, this time for symptoms caused by alcohol abuse and excess pain medication (due to the fall), including hepatic encephalopathy, epigastric pain and gastric varices with ongoing spinal deformity (from the fall).  Tr. 24, 926-27, 931.  During this hospitalization, Plaintiff experienced a psychotic break that treating providers alternatively attributed to alcohol abuse and/or excess pain medication; one note indicates that he then was "currently only able to lift two pounds."  Tr. 914-17.  After this hospitalization, Plaintiff was limited in his ability to treat pain with medication.  See Tr. 1188.  On July 2018, still recovering from the injuries caused by the fall, at the age of fifty, Plaintiff applied for DIB benefits a second time, this time alleging disability from the day following the fall (December 9, 2017), caused by the symptoms of arthritis, T12 and L1 compression fractures, rib fractures left side 2-10, depression, liver cirrhosis, gastrointestinal ulcers, and migraines.  Tr. 119-20.

On December 31, 2019, an administrative law judge ("ALJ") issued a decision ("First ALJ Decision") finding that Plaintiff's RFC[1] made him capable of light work[2] with additional postural, environmental and mental limitations.  Tr. 159-62.  Based on then-applicable law, Plaintiff's age (50) and the ALJ's finding that Plaintiff was not able to communicate in English, Plaintiff was found to be disabled since the alleged onset date.  Tr. 162-63.  The Appeals Council disagreed.  Tr. 168-72.  It vacated the First ALJ Decision and remanded the case for "further

---

[1] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

[2] During the first hearing, the first ALJ truncated the proceeding, advising Plaintiff's attorney that, "whether it's sedentary or light I agree he GRIDs . . . [and is] disabled."  Tr. 109.

2

evaluation of whether he is unable to communicate in English." Tr. 168-72. The timing of the remand resulted in further proceedings after a change in the law that effectively made the inability to communicate in English irrelevant.[3] On June 30, 2021, another ALJ decided that, until November 12, 2019,[4] Plaintiff could perform light work with additional postural, environmental and mental limitations, this time resulting in the conclusion that Plaintiff was not disabled from the date of the fall until November 12, 2019. Tr. 17-32 ("Second ALJ Decision"). Beginning on November 12, 2019, however, the second ALJ found that Plaintiff's declined ability to concentrate, pace and persist due to the pain and fatigue caused by exacerbation of his spine injury would cause him to be off task for at least twenty percent of the workday; this finding resulted in the conclusion that he became disabled as of November 12, 2019. Tr. 27-31. The Appeals Council declined to review the Second ALJ Decision. Tr. 1-4.

Citing Sacilowski v. Saul, 959 F.3d 431, 439 (1st Cir. 2020), Plaintiff has moved for reversal with an award of benefits (or alternatively for further proceedings) of the adverse portion of the Second ALJ Decision (for the period from the day following the fall – December 9, 2017 – until November 12, 2019). ECF No. 11. In his motion, Plaintiff alleges that the ALJ erred in formulating the RFC (1) by discounting the two opinions of longtime treating primary

---

[3] The First ALJ Decision was based on a regulation that compelled a finding of disability if a claimant of Plaintiff's age is limited to light work and is "illiterate or unable to communicate in English." Tr. 159-65. On the day the First ALJ Decision issued, the Commissioner was in the process of changing the regulations to remove the inability to communicate in English as an educational category. See Removing Inability to Communicate in English as an Education Category, 84 Fed. Reg. 1006-01 (proposed Feb. 1, 2019) (to be codified at 40 C.F.R. pts. 404, 416). The Final Rule implementing this change was published on February 25, 2020, to be applicable to cases pending on April 27, 2020. See Removing Inability to Communicate English as an Education Category, 85 Fed. Reg. 10586-01 (Feb. 25, 2020). On the next day after the Final Rule was published – February 26, 2020 – the Appeals Council sent notice of its intent to vacate the First ALJ Decision. Tr. 249-54. The Appeals Council's remand order issued on May 12, 2020. Tr. 168-72. Because of the Appeals Council's actions, Plaintiff's case was still pending on the effective date of the rule change.

[4] This date – November 12, 2019 – is referred to in the record as the "established onset date" or "EOD." In the interest of clarity, I have used the date itself, referring to the pre-EOD period as the "pre-November 12, 2019, period," and to the post-EOD period as the "post-November 12, 2019, period."

care physician, Dr. Olga Tverskaya, relying instead on the flawed findings of the non-examining state agency physicians, psychiatrist and psychologist; (2) by incorrectly making medical determinations regarding matters he lacks the expertise to judge; and (3) by failing to credit Plaintiff's subjective statements about pain.  Id. at 23-41.  The Commissioner has filed a counter motion to affirm.  ECF No. 13.  The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  In light of the complexity of the issues presented by the case, I held a hearing on July 7, 2024.

**I.    Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam).  Once the Court concludes that the decision is supported by substantial evidence and that the Commissioner correctly applied the law, the ALJ's decision must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30.  The Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Hum. Servs., 877 F.2d 148, 153 (1st Cir. 1989)).

"[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez, 647 F.2d at 222).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the law was incorrectly applied, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)). If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Sacilowski, 959 F.3d at 433, 440-41; Jacquelyn V. v. Kijakazi, C.A. No. 21-314MSM, 2023 WL 371976, at *2 (D.R.I. Jan. 24, 2023), adopted by Text Order (D.R.I. Mar. 7, 2023).

## II.    Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a). The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.    The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520(a). First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Id. § 404.1520(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work

activities, then the claimant does not have a severe impairment and is not disabled.  Id. §

404.1520(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20

C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, if a

claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id.

§ 404.1520(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and

past work) prevent doing other work that exists in the local or national economy, a finding of

disabled is warranted.  Id. § 404.1520(a)(4)(v).  Significantly, the claimant bears the burden of

proof at Steps One through Four, but the Commissioner bears the burden at Step Five.

Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five

step process applies to DIB claims).

    **B.    Opinion Evidence**

    An ALJ must consider the persuasiveness of all medical opinions in a claimant's case

record.  See 20 C.F.R. § 404.1520c.  The most important factors to be considered when the

Commissioner evaluates the persuasiveness of a medical opinion are supportability and

consistency; these are usually the only factors the ALJ is required to articulate.  Id. §

404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019); Gorham v.

Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019).  Supportability

"includes an assessment of the supporting objective medical evidence and other medical

evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence

in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg.

5844, 5859 (Jan. 18, 2017).  Other factors that are weighed in light of all of the evidence in the

record include the medical source's relationship with the claimant and specialization, as well as

"other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R.

§ 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859.  "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854.  If the ALJ has equally persuasive medical opinions or administrative findings about the same issue that are both supported and consistent but not the same, he is required to articulate the other factors that he relied on to resolve the conflict.  20 C.F.R. § 404.1520c(b)(3).

### C.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1999).  Congress has determined that a claimant will not be considered disabled unless medical and other evidence (e.g., medical signs and laboratory findings) is furnished showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  To comply with this requirement, an ALJ must consider a claimant's statements about pain and determine the extent to which they are reasonably consistent with the objective medical evidence but also may not disregard them "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms."  SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017); 20 C.F.R. § 404.1529(c)(3).

Although the law is clear that an individual's statements as to pain alone are not conclusive of disability, 42 U.S.C. § 423(d)(5)(A), remand is required if the ALJ fails properly to perform the pain analysis as long as the claimant has sustained her burden of presenting a competent treating source opinion endorsing both the diagnosis of an impairment that causes subjective pain, as well as evidence of function-limiting pain.  Tegan S. v. Saul, 546 F. Supp. 3d

162, 171 (D.R.I. 2021).  That is, hearing officers are "not free to discount pain complaints simply because the alleged severity thereof is not corroborated by objective medical findings."  Carbone v. Sullivan, No. 91-1964, 960 F.2d 143, 1992 WL 75143, at *5 (1st Cir. Apr. 14, 1992) (per curiam) (unpublished table decision); see Carlos N. v. Kijakazi, C.A. No. 20-398-MSM-PAS, 2021 WL 5231949, at *8-9 (D.R.I. Nov. 10, 2021), adopted, 2022 WL 103322 (D.R.I. Jan. 11, 2022).  An ALJ's "extreme insistence on objective medical findings to corroborate subjective testimony of limitations of function because of pain" is error.  Dianne D. v. Berryhill, C.A. No. 18-312JJM, 2019 WL 2521840, at *7 (D.R.I. June 19, 2019) (citing Avery v. Sec'y of Health & Hum. Servs., 797 F. 2d 19, 22 (1st Cir. 1986)), adopted by Text Order (D.R.I. July 5, 2019).

### D.    Absenteeism

When the symptoms of an impairment or combination of impairments would cause the claimant periodically to be unable to attend work, it is reversible error if the ALJ fails specifically to assess the issue of absenteeism.  Amanda S. v. Berryhill, C.A. No. 18-0001-JJM, 2019 WL 1316979, at *6-7 (D.R.I. Mar. 22, 2019), accepted by Text Order (D.R.I. Apr. 8, 2019) (directing award of benefits), affirmed sub nom. Sacilowski, 959 F. 3d 431 (error to fail to consider probable absenteeism caused by migraines that recur despite medication).  Remand is similarly required if the ALJ relies on the findings of non-examining physician experts who did not address absenteeism because they did not see records establishing the sheer scope of claimant's many medical concerns.  Jessica S. v. Kijakazi, C.A. No. 21-75MSM, 2022 WL 522561, at *4-6 (D.R.I. Feb. 22, 2022), adopted, 2022 WL 834019 (D.R.I. Mar. 21, 2022) (non-examining experts "did not have access to a sufficiently developed record to permit them even to consider how the total number of medical appointments and hospitalizations would impact work attendance").  That is, it is error for an ALJ to ignore the impact on the ability to work of

multiple impairments each of which could impact attendance, particularly where it is "undisputed that [the claimant's medical] issues required ongoing treatment throughout [an extended period]."  Sacilowski, 959 F.3d at 435-36; see 20 C.F.R. § 404.1523(b) (requirement for treatment of combined effect of multiple impairments).  And when a treating source's longtime familiarity with a claimant and her ailments confirms that the absenteeism caused by the impairments is work-preclusive, remand is appropriate, despite the claimant's capacity to engage in certain daily home activities.  Jacquelyn V., 2023 WL 371976, at *4-5.

> ### E.     Assessment of Claimant's Subjective Statements

In addition to statements regarding pain, the ALJ must consider the claimant's other subjective statements regarding the limitations caused by symptoms.  Where an ALJ decides not to fully credit such subjective statements, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg v. Apfel, 26 F. Supp. 2d 303, 309 (D. Mass. 1998).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987).  However, in the absence of evidence that directly rebuts the claimant's testimony or presents some other reason to question its credibility, the ALJ must take the claimant's statements as true.  Sacilowski, 959 F.3d at 441.

## III.     **Factual Background**

In this case, it is undisputed that, throughout the period in issue, Plaintiff could not perform his past relevant work as a power press operator because, since the fall off the roof, he has been capable of no more than light exertional work, with additional postural and environmental limits, and no more than unskilled simple work, with limited social contact,[5] due

---

[5] Plaintiff's mental-health-based limitation to unskilled simple work with social limitations was questioned by the Appeals Council in its remand order.  Tr. 168.  Ignoring the challenges that a Russian/Armenian speaker might face

to the severe impairments of depression/anxiety, PTSD, substance use disorder, degenerative disc disease of the lumbar/thoracic spine, chronic liver disease and peptic ulcers.  Tr. 20-31.  It is also undisputed that, at least since November 12, 2019, the pain and fatigue caused by pain had reached a level of severity that resulted in disability due to Plaintiff's inability to concentrate, attend and persist.  Tr. 27-31.  Thus, the focus of this appeal is limited to two issues, either one of which could require the Court to remand the matter.

First, Plaintiff argues that his exertional limits throughout the relevant period permitted him to do no more than sedentary work, as his treating primary care physician, Dr. Tverskaya, opined on June 12, 2019, and again on February 26, 2021.  Tr. 1227-29, 1273-75.  Dr. Tverskaya's opinions are corroborated by Plaintiff's subjective statements in the function reports and his testimony.  See Tr. 53-54, 445-52, 463-70.  As Plaintiff contends, and the Commissioner does not dispute, if he is appropriately found to be limited to sedentary work, a finding of disability is compelled by Grid Rules.  See 20 C.F.R. part 404, Subpart P, Appendix 2 § 201.00, Table No. 1, Rule(s) 201.09, 201.10, 201.12, or 201.14; Tr. 109.

Second, relying on Dr. Tverskaya, the consulting psychologist, Dr. Louis Cerbo, his own subjective statements, and other substantial evidence of record, Plaintiff argues that the impact of pain and fatigue on his ability to concentrate, attend and persist (resulting in his being off-task or absent) was at least as severe during the pre-November 12, 2019, period as it was for the period

in seeking mental health treatment, the testimony that access to mental health treatment was limited by financial concerns (Tr. 55) and overlooking Plaintiff's psychotic episode in June 2018 (Tr. 914-17), the Appeals Council focused on the lack of mental health treatment and benign notations in certain treating records.  It also expressed skepticism regarding the findings of the consulting examiner, psychologist, Dr. Louis Cerbo.  Tr. 169-70.  Based on this skepticism, the Appeals Council's remand order included the directive that the new ALJ must procure another consultative examination regarding Plaintiff's mental health limitations.  Tr. 171.  The second ALJ was unable to find a consulting psychologist able to communicate with Plaintiff in his native language and complied with the remand order by calling a non-examining medical expert to testify.  Tr. 60-79.  Ironically, despite the Appeals Council's skepticism, the outcome did not change in that the Second ALJ Decision's pre-November 12, 2019, RFC includes substantially similar cognitive and mental limitations (permitting only unskilled simple work with additional social limits) to those in the First ALJ Decision.  See Tr. 17-32; 159-62.

after.  Id. at 37-39.  Relying on the ALJ's off-task finding for the latter period, Plaintiff contends

that the ALJ's selection of November 12, 2019, as the start date for that finding is arbitrary and

unsupported by substantial evidence.  Id.  Because the unrebutted substantial evidence

supporting the off-task finding is equally applicable, indeed more applicable, to the pre-

November 12, 2009, period, Plaintiff contends that a finding of disability for the earlier period is

also compelled.  Id.

Central to this case is Plaintiff's subjective pain and fatigue as assessed by Dr.

Tverskaya, a Russian speaking physician who was able to communicate with Plaintiff in one

of his two languages (Russian)[6] and who had functioned as his primary care physician since

2015, that is, prior to and throughout the period in issue.  See Tr. 1273.  As confirmed by the

record, Dr. Tverskaya's treating notes and opinions reflect that she saw Plaintiff regularly,

treating him for the pain and fatigue caused by his spinal/rib injury during the extended

period of his recovery from the fall and after; for his ongoing and serious liver, cirrhosis,

gastroenterological concerns and abdominal pain; and for his mental health symptoms,

including depression and poor memory.  Tr. 659-785, 1058-1134, 1146-83, 1199-1226.

A.      Treatment, Observations and Opinions during 2018

Following the December 2017 fall, during the early months of 2018, the record is

replete with evidence of debilitating pain.  See Tr. 1049 (on February 1, 2018, physical

therapist notes "[u]nable to tolerate PT due to 8/10 pain"); Tr. 1048 (on February 8, 2018,

physical therapy cancelled because "[i]n too much pain")[7]; Tr. 787-89 (on February 15,

---

[6] That Dr. Tverskaya is a Russian speaker was confirmed with the parties at the hearing held before me on July 7, 2023.

[7] On March 19, 2019, Plaintiff was discharged from physical therapy; the form indicates that the reason was "non-compliant."  Tr. 1040.

2018, symptoms of bilateral radiculopathy observed, new imaging ordered; brace still needed). Then, in June 2018, Plaintiff was hospitalized for an extended period at Kent Hospital due to a significant exacerbation of liver (cirrhosis) and gastrointestinal issues (ulcer). Tr. 926-31. During this hospitalization, which was almost seven months after the fall, Plaintiff's wife reported that he had lost thirty pounds since the fall. Tr. 967. Plaintiff was given morphine for both abdominal and back pain, Tr. 877, became psychotic, Tr. 914-17, and reported that "[h]e is currently only able to lift two pounds." Tr. 916. Records from this hospitalization reflect that, while the spinal/rib fractures had healed or were healing, "compression deformity of T12 vertebral body and L1 vertebral body unchanged." Tr. 930. Plaintiff was noted as still experiencing back pain, radiating down one leg, as well as abdominal pain especially in the upper gastric area. Tr. 956, 961. Dr. Tverskaya was involved in ongoing treatment for Plaintiff's liver and gastrointestinal impairments (ulcer) caused by alcohol use and/or excess pain medication following the fall, including leading up to and following this hospitalization. Tr. 695-703.

Throughout the summer of 2018, Dr. Tverskaya's treatment of Plaintiff continued. Her notes from June, July and August 2018 reflect that Plaintiff continued to be tired and complained of both abdominal and back pain. Tr. 1070-1120; see Tr. 1050 (in July 2018, gastroenterologist notes ongoing abdominal pain in upper abdomen; assesses ulcer and liver/pancreas abnormalities). In June 2018, Dr. Tverskaya began actively assisting Plaintiff in procuring a consultation with a neurosurgeon and/or orthopedist to address back pain. Tr. 1071, 1076, 1082, 1087. By August 2018, Dr. Tverskaya's treating notes indicate that Plaintiff still complained of abdominal (impacted by cirrhosis and gastrointestinal issues) and low/upper back pain. Tr. 1081-82.

On September 5, 2018, the foregoing record was examined initially by state agency physician Dr. Joseph Callaghan. Tr. 124. Dr. Callaghan's findings are based on his prediction that Plaintiff's significant limitations caused by the injuries from the December 2017 fall and from the June 2018 flare in liver/gastrointestinal issues would continue to improve and would not be expected to persist at a disabling level of intensity for twelve months. Therefore, he ignored them in opining to an RFC that contemplated the ability to lift up to fifty pounds and to stand/walk up to six hours during a workday, permitting medium exertional work. Tr. 124, 130, 134-35.

In late October 2018, Plaintiff was examined by a state agency consulting psychologist, Dr. Louis Cerbo. Tr. 1139. Dr. Cerbo noted the significant difficulty of communicating with Plaintiff despite assistance both from an interpreter and Plaintiff's daughter. Tr. 1141-42. Dr. Cerbo diagnosed PTSD, depression and history of alcoholism, with a poor prognosis, including that Plaintiff's symptoms included decreased concentration due to PTSD (causing sleep interruption) and chronic pain (resulting in frustration, irritability and agitation). Tr. 1140-44. Dr. Cerbo's report indicates that Plaintiff "becomes easily frustrated, irritable and agitated due to his pain and mood, which caused him to prematurely terminate the task," adversely impacting "Task Persistence." Tr. 1144. Dr. Cerbo also expressed concern about Plaintiff's cognitive functioning "due to hepatic encephalopathy," which he could not measure precisely due to the language barrier. Tr. 1142, 1144.

In reliance on this report, on November 27, 2018, the non-examining psychiatrist, Dr. Susan Killenberg, found that Plaintiff suffered from severe mental impairments – Major Depressive Disorder, PTSD, Alcohol Abuse and Hepatic Encephalopathy (Neurocognitive

Disorder) – of moderate impact in all spheres, with acknowledged exacerbation from pain, fatigue and low frustration tolerance. Tr. 126-27, 132-33. However, although Dr. Killenberg noted issues of "variability in work attendance, concentration, persistence and pace due to mood, pain and anxiety symptoms," she concluded that Plaintiff retained the ability to attend and persist at simple tasks over the course of a workday. Tr. 132. Like Dr. Callaghan, her RFC finding – that Plaintiff's mental impairments are severe and "appear to be exacerbated by pain," but that Plaintiff could perform unskilled simple work with limited social interaction – appears to be based on the expectation that Plaintiff's pain would continue to abate as Plaintiff continued to recover from the spinal/rib fractures and the liver/gastroenterological/psychotic issues that flared in June 2018. Tr. 127 ("it is <u>anticipated</u> the claimant would have moderate functional impairments") (emphasis supplied).

After the initial phase review, in December 2018, Plaintiff continued ongoing care with Dr. Tverskaya and with a gastroenterologist, who noted daily pain and abnormal ammonia levels despite Plaintiff's stated compliance with medical advice to refrain from use of alcohol and pain medication. <u>See</u> Tr. 1188.

## B.    Treatment, Observations and Opinions during 2019

In January 2019, Plaintiff saw Dr. Tverskaya, who noted pain in the low back, legs and abdomen, "on&off, constant, dull to sharp, moderate." Tr. 1219-20. This note reflects Dr. Tverskaya's ongoing difficulty in getting a referral to a specialist for back pain. <u>See</u> Tr. 1226 (not seen by "ortho" due to insurance issue). Plaintiff saw Dr. Tverskaya again in February 2019, presenting with elevated ammonia level, abdominal pain, fatigue and headache. Tr. 1213. In March 2019, Plaintiff returned to the gastroenterologist, who noted epigastric pain. Tr. 1230, 1232.

14

In March 2019, a state agency physician, Dr. L. Zuniga, performed a file review at the reconsideration phase; the relevant[8] findings acknowledge that Plaintiff's "ADLS limited by spine injury and pain," that the spinal fractures/degenerative disc disease, cirrhosis and ulcer are all severe impairments, but that Plaintiff retains the RFC to lift up to twenty-five pounds and to stand/walk for six of eight hours, which is materially less than what the initial phase non-examining physician found, but still positions Plaintiff just over the cusp of the medium exertional level. Tr. 148-51. Dr. Zuniga's additional explanation includes the same expectation that was pivotal at the initial phase – "NOT EXPECTED TO LAST 12 MONTHS." Tr. 150. The non-examining psychologist at the reconsideration phase (Dr. Therese Harris) found that the additional evidence added nothing new, including that there was no new information about the serious cognitive and attentional concerns identified by Dr. Cerbo; she adopted Dr. Killenberg's finding that pain would have only moderate impact on Plaintiff's ability to concentrate, attend and persist. Tr. 146-47, 151-53.

Unseen by the non-examining experts are the June 2019 treating records for Dr. Tverskaya and the gastroenterologist. These do not reflect abatement of pain; rather, they evidence ongoing epigastric pain, a distended abdomen, difficulty with memory and sleeping, back pain, restricted range of motion, spinal tenderness and depression (resulting in a prescription for Zoloft). Tr. 1208-13, 1233; see Tr. 1208 ("everything hurts"). Also in June 2019, Dr. Tverskaya filled in her first of two "Physical Capacity Questionnaires." Tr. 1227. This opinion contains detailed information regarding Plaintiff's symptoms and related

---

[8] There is a second set of findings on reconsideration from another state agency physician, Dr. Stephanie Green; these reflect the plainly wrong conclusion that Plaintiff had fully recovered and had no severe impairments at all. Tr. 144-45 ("NSI"). A month later the file was reviewed again by Dr. Zuniga, whose findings are entirely different from those of Dr. Green. Tr. 150-51. Both ALJs failed to reconcile the difference between these two non-examining medical consultants. The Second ALJ Decision makes no reference to Dr. Green's analysis; instead, it reflects only the ALJ's collective finding that he found all of the "State agency . . . medical consultants . . . to be generally persuasive." Tr. 25.

clinical findings.  Id.  In it, Dr. Tverskaya opines that Plaintiff's "on & off" pain and fatigue would frequently interfere with his concentration, persistence and pace and would cause him to be absent more than four days a month, as well as that his ability to lift is limited to "rarely" more than one to two gallons of milk (consistent with a sedentary exertional limitation) and his ability to stand/walk is limited to two hours or less, ruling out even sedentary work.  Id.

In July 2019, based on his complaint of ongoing and persistent chronic back pain and bilateral leg symptoms since the fall in 2017, Plaintiff was finally seen by an orthopedist, Dr. Michael Mariorenzi.  Dr. Mariorenzi communicated with Plaintiff through his wife who did "most of the talking and translating."  Tr. 1239.  On examination, Dr. Mariorenzi noted pain on straight leg raise and that Plaintiff appeared "quite stiff," but ordered conservative care, with follow up in three months for an MRI or x-ray if symptoms remained.  Tr. 1239-40.  At the follow-up appointment on November 12, 2019, Dr. Mariorenzi noted Plaintiff's continued complaint of persistent chronic back pain and bilateral leg symptoms, exacerbated by any lifting, bending and prolonged standing and walking.  Tr. 1237.  On examination, Dr. Mariorenzi noted a slight improvement, rather than a worsening, since the prior visit in July; however, despite conservative treatment, he still found back pain with bilateral leg symptoms, a rigid stance, slow sit/rise/stand, muscle spasm and discomfort in coming to full extension.  Id.  He diagnosed degenerative disc disease with possible nerve root involvement, noted that conservative treatments had failed and ordered an MRI.  Tr. 1237-38.  The MRI, performed on November 18, 2019, was abnormal.  Tr. 1243.  None of Dr. Mariorenzi's records were seen by the non-examining experts.

### C.    Treatment, Observations and Opinions during 2020 and 2021

In January 2020, the MRI was reviewed by providers at the Brain and Spine Neurosurgical Institute ("BSNI"), who noted stenosis and "[c]hronic appearing compression fracture." Tr. 1265. Following an abnormal examination, including observation of antalgic gait, Plaintiff began a series of injections. Tr. 1262, 1265-67. By March 2020, the possibility of surgery was raised. Tr. 1262. A BSNI provider describes Plaintiff's condition:

> 2 years of progressive back and bilateral leg pain since he was injured when he fell off a roof. . . . Unfortunately, his back and bilateral leg pain has continued despite conservative treatment. . . . His pain does extend down both legs to his feet. He finds that any activity aggravates it and nothing helps. . . . He is walking with an antalgic gait. . . . Also notes occasional urinary incontinence episodes that has been ongoing for several years.

Tr. 1260-62. BSNI notes from September 2020 indicate that "we have decided to proceed with surgical intervention." Tr. 1251. None of the BSNI records were seen by the non-examining experts.

On February 26, 2021, Dr. Tverskaya signed her second opinion. Tr. 1273-75. Like her first opinion, this one was not seen by the non-examining experts. It is substantially similar to the first, including that it contains the same detail regarding Plaintiff's symptoms, clinical signs and functional limitations. Regarding the severity of symptoms, Dr. Tverskaya noted slight improvement in most functional categories since her last opinion. Tr. 1274-75. However, her opinion still reflects, at most, the capacity to perform sedentary work, and still reflects that Plaintiff would frequently be off task and absent due to pain and fatigue. Id. By contrast to his across-the board rejection of Dr. Tverskaya's nearly identical first opinion, the ALJ found this one to be "partially persuasive" as to the period after November 12, 2019. Tr. 28.

The final medical opinion came from the medical expert – psychiatrist Dr. Chukwuemeka Efobi –who testified at the ALJ's hearing on March 1, 2021.  This telephonic hearing was almost chaotic in that lines were dropped several times, including during Dr. Efobi's testimony, and both the ALJ and Plaintiff's counsel repeatedly expressed difficultly in hearing and understanding Dr. Efobi.  Tr. 60-79; see, e.g., Tr. 67, 69, 73, 88-89.  Dr. Efobi's opinion, based solely on "psychiatric" matters, Tr. 75-76, was that Plaintiff is impaired by only mild limitations in every relevant sector (including attention and task persistence) except for the ability to deal with complex tasks, as to which he opined to moderate limitations.  Tr. 69-70.

**IV.    Analysis**

There are many troubling aspects to this case.  I begin by highlighting several that are not technically in issue, but that, considering the Court's duty to "ensure a just outcome in Social Security disability claims," Mary K. v. Berryhill, 317 F. Supp. 3d 664, 667 (D.R.I. 2018) (internal quotation marks omitted), may impact the Court's approach.

First is the Appeals Council's determination to jettison the finding of the first ALJ, which was firmly grounded on her own observations of Plaintiff, as well as the observations of Dr. Cerbo, and confirmed by the treating notes of Dr. Mariorenzi, that Plaintiff's ability to communicate in English was significantly impaired.  Ignoring that this is more than enough to constitute substantial evidence, the Appeals Council purported to rely on its determination that "the finding that the claimant is unable to communicate English is not supported by substantial evidence."  Tr. 169.  With ample evidence to support the first ALJ's finding, it is difficult to understand how this is not an egregious error by the Appeals Council. Importantly, this flawed finding caused Plaintiff's communication limitation to become

18

irrelevant due to the change in the applicable standard that had just become final.  It also has led to an anomaly – that the slightly <u>more</u> restrictive RFC found by the second ALJ for the pre-November 12, 2019, period has resulted in a finding of not disabled.  Yet, as Plaintiff concedes, the resulting remand order is not a final reviewable decision of the agency.  <u>See</u> <u>Smith v. Berryhill</u>, 139 S. Ct. 1765, 1771 (2019) ("Social Security Act allows for judicial review of 'any final decision'").

Second is the ALJ's reliance on the testimony of the vocational expert ("VE"), who identified three jobs from the Dictionary of Occupational Titles ("DOT"); of these, two[9] seemed flawed in that one does not seem to meet Plaintiff's RFC[10] and both are potentially obsolete.[11]  The VE testified that these three amount to only 12,000 jobs available nationally and provided no information regarding whether such positions are available locally or regionally.  Tr. 30.  Yet the ALJ found these three jobs to be sufficient to permit Plaintiff to make a "successful adjustment to other work."  Tr. 30-31.  Despite this being a Step Five determination, where the burden has shifted to the Commissioner, the Second ALJ Decision

---

[9] If these two were eliminated, what remains is the job of "linen grader," with only 3,500 positions nationally.  Tr. 30.

[10] It is unclear how an individual limited to only occasional contact with the public (as the ALJ found Plaintiff to be) could work in a retail position weighing produce for retail customers.  <u>See</u> Tr. 30 (referencing DOT 299.587-010 - PRODUCE WEIGHER (retail trade), https://occupationalinfo.org/29/299587010.html).

[11] Courts have criticized the Social Security Administration for its failure to update the DOT and to eliminate the many outdated jobs that it contains.  <u>See</u> <u>Scott B. v. Kijakazi</u>, C.A. No. 21-481MSM, 2022 WL 17335993, at *8 (D.R.I. Nov. 30, 2022), <u>adopted</u>, 2023 WL 1794576 (D.R.I. Feb. 7, 2023) (noting ongoing tension between some circuits and Social Security Administration regarding failure of agency to procure more reliable and precise jobs data despite project to do so that had been ongoing since 2008) (citing <u>Ruenger v. Kijakazi</u>, 23 F.4th 760, 762-63 (7th Cir. 2022) (per curiam)); <u>Vining v. Astrue</u>, 720 F. Supp. 2d 126, 128 n.3 (D. Me. 2010) (DOT "was last updated in 1991, and its job descriptions may now be badly out of date.  I understand that the Commissioner still uses it (and also is actively considering whether to go to a new system because of its obsolescence)").  For example, the job of retail "produce weigher" is a function that likely has been displaced by technology; also suspect is the vocational expert's testimony that there are 5,500 jobs available nationally for a "shaker (wearing apparel)," a job that "may" include starching of collars and cuffs.  Tr. 30; <u>see</u> 299.587-010 - PRODUCE WEIGHER (retail trade), https://occupationalinfo.org/29/299587010.html; 361.687-026 - SHAKER, WEARING APPAREL, https://occupationalinfo.org/36/361687026.html.

provides no analysis of how such a small set amounts to a "significant number" available to Plaintiff.  See Cabreja v. Astrue, C.A. No. 11-130-ML, 2012 WL 272746, at *5-6 (D.R.I. Jan. 27, 2012) (remand ordered for determination whether 16,566 jobs in national economy is enough to be "significant number"); compare Byrd v. Astrue, Case No. C11-0014-JCC, 2012 WL 13148983, at *2 (W.D. Wash. Jan. 12, 2012) (finding that "the existence of 12,500 jobs nationally" does not constitute a significant number of jobs for the step five analysis.), with Hamilton v. Comm'r of Soc. Sec., 105 F. Supp. 3d 223, 231 (N.D.N.Y. 2015) (noting that 5,160 jobs in the national economy is not enough but that "numbers of jobs in the ballpark of 10,000 to 11,000 have been held significant").  Yet Plaintiff did not raise these issues during the ALJ's hearing when the VE was testifying; therefore, they are waived.  See Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001).

Third, is the ALJ's purported reliance on the testifying medical expert, psychiatrist Dr. Efobi, despite his finding of only a "mild" impairment in Plaintiff's ability to concentrate and persist.  Tr. 69.  This testifying psychiatrist expressly rejected the report of the examining psychologist, Dr. Cerbo, instead relying principally on Plaintiff's lack of treatment with mental health specialists, without regard to whether such specialty treatment might have been unavailable to Plaintiff because of insurance or language limitations.  See Tr. 62.  The medical expert also relied on Dr. Tverskaya's notes, which sometimes reflect a depression score of "zero," although there is no indication that a "zero" depression score meant only that the depression test had not been administered.  Tr. 66.  He ignored that Dr. Tverskaya's opinion clearly states that "major depression" was one of her diagnoses.  Tr. 1227, 1273.  Perhaps most troubling is the medical expert's testimony that he essentially ignored the pervasive evidence of pain so that his opinion sidesteps the core issue in this

case.  Tr. 76 ("my concern was the psychiatric").  Further, the transcript of the medical expert's testimony reflects that the phone connection was poor, that both the ALJ and the attorney had frequent difficulties understanding him and that the testimony was interrupted when the line was disconnected.  Tr. 61-79.  Yet the ALJ's decision states that he found this medical expert to be "generally persuasive" for both the pre- and the post-November 12, 2019, period.  Tr. 25-26, 29.  This finding makes no sense in that the ALJ actually ignored the medical expert's testimony that Plaintiff had only mild limitations in the ability to concentrate and persist during the post-November 12, 2019, period, Tr. 69, when the ALJ adopted Dr. Tverskaya's opinion that pain and fatigue would materially interfere with the ability to concentrate, precluding all work.  Tr. 27-29.  Plaintiff highlights the problems tainting the ALJ's treatment of the medical expert's opinion but concedes that Dr. Efobi's testimony is superfluous in that the ALJ actually relied on it solely for the conclusion that Plaintiff is limited to unskilled work, which is consistent with the other evidence of record.

However troubling these matters may be, they are mere backdrop to what is at the heart of this appeal – Plaintiff's contention that the ALJ erred (1) in rejecting Dr. Tverskaya's opinions about Plaintiff's exertional limitations (restricting him to sedentary work or less), and (2) in rejecting Dr. Tverskaya's opinion for the pre-November 12, 2019, period about the impact of pain and fatigue on his ability to concentrate and attend, but accepting it for the post-November 12, 2019, period.  I agree – I find that these determinations are tainted by error because the ALJ's reason for finding both of the Tverskaya opinions unpersuasive for the pre-November 12, 2019, period – that they "lack specificity," are "conclusory," "provid[e] very little explanation of the evidence relied on in forming" them and are nothing more than "checked boxes" – is simply inaccurate.  Tr. 26.

21

Having reviewed both of the opinions carefully, I find that they are detailed, nuanced and well-developed, including that Dr. Tverskaya's opinion that the pain is "on & off," Tr. 1227, 1273, is consistent with her observations in treating notes (which sometimes reflect normal findings on physical examination), as well as that her second opinion reflects Plaintiff's slight improvement in certain exertional functions.  Importantly, the ALJ does not find that there are treating records that clash with Dr. Tverskaya's opinions limiting Plaintiff to sedentary work (or less) and finding that he lacks the ability to concentrate, attend and persist at a level adequate to sustain work due to pain and fatigue.  See Sacilowski, 959 F.3d at 440-41 (even if not deemed "controlling," treating physician's opinion must be weighed based on opportunity for direct and continual observation, particularly when record lacks substantial evidence to contradict it).[12]

Exacerbating this error is the ALJ's purported reliance on the non-examining physicians' findings that Plaintiff is capable of medium level work to provide substantial contradictory evidence.  For starters, it is impossible to ascertain which of them are relied on as the foundation for rejecting Dr. Tverskaya's opinions because the ALJ simply labelled all of the "State agency . . . medical consultants," Tr. 25, collectively as "generally persuasive," even though the somatic medical opinions at the initial (Dr. Callaghan) and reconsideration (Drs. Green and Zuniga) phase not only vary materially from the opinions of Dr. Tverskaya, but also are starkly different from each other.

The flaw in the ALJ's reliance on these opinions is exposed by focusing on just one aspect of them – Plaintiff's ability to lift.  Dr. Tverskaya's June 2019 opinion states that Plaintiff

---

[12] The Commissioner argues that this aspect of the holding of Sacilowski has no force because Sacilowski issued before the Social Security Administration dropped the "controlling weight" rule for treating source opinions in favor of the "persuasive force" rule.  ECF No. 13 at 8-9.  This argument fails because it ignores that Sacilowski expressly addressed the eventuality that a treating source may not be "deemed controlling."  Sacilowski, 959 F.3d at 441.

was limited to lifting at a level consistent with sedentary work, while Plaintiff himself noted in the function report that he cannot lift more than five pounds.  Tr. 450, 1228; see Tr. 916 (as of June 2018, "he is currently only able to lift two pounds").  By contrast, the initial phase physician relied on his prediction that Plaintiff would recover from the injuries sustained in the fall in less than twelve months and opined to the ability to lift up to fifty pounds, permitting medium exertional work.  Tr. 128-30, 134.  At the reconsideration phase, Dr. Green opined to no limit on lifting, while Dr. Zuniga opined to a lifting limit of twenty-five pounds occasionally, still consistent with medium-level work.  Tr. 148-51.  Despite purporting to find all of these very different non-examining opinions "generally persuasive," the ALJ does not actually rely on any them, instead landing on a light exertional RFC – the ability occasionally to lift no more than twenty pounds.  Tr. 22, 27.  That is, the ALJ's finding is closer to Dr. Tverskaya's opinion, yet the ALJ found it to be "unpersuasive."  Tr. 26.  Thus, the ALJ's opinion that Plaintiff is capable of light work seems "to be a compromise, arrived at without evidentiary foundation, and not reflecting any medical foundation," as this Court condemned in Forbes v. Colvin, No. CA 14-249-M-PAS, 2015 WL 1571153, at *9 (D.R.I. Apr. 8, 2015).  Coupled with the lack of a good reason to reject the Tverskaya treating source opinion, I find that this is error that requires remand.  See id.

    Also flawed is the ALJ's reliance on the non-examining mental health professionals who both found that, "[c]laimant will have variability in work attendance, concentration, persistence and pace due to mood, pain, and anxiety symptoms," but that this would not preclude all work.  Tr. 132, 152.  The ALJ's reliance on these findings for the pre-November 12, 2019, period suffers from the problem discussed above – that the ALJ's summary finding that all of the state agency opinions were collectively "generally persuasive" is

23

insufficient for the Court to assess what was actually relied on.  Further, these pre-November 12, 2019, findings seem grounded in the flawed physical assessment of the non-examining physicians and are therefore tainted by the assumption that Plaintiff will continue to recover, minimizing the distracting impact of pain and fatigue.  Further, the ALJ illogically finds that these opinions continued to be "persuasive" for the post-November 12, 2019, period, even though they clash materially with his pivotal finding that the ability to concentrate and attend had so declined by then as to render persuasive the Tverskaya opinion that Plaintiff would be off task and absent to the point that all work is precluded.  Tr. 28.  This determination too seems based on the ALJ's judgment on matters "that are beyond his capacity and the legal limits on his discretion."  Forbes, 2015 WL 1571153, at *10 (internal quotation marks omitted).

An additional reason why none of the non-examining expert administrative findings in this record amount to substantial evidence is that the record continued to develop with the addition of evidence that significantly undermines their prediction that Plaintiff's pain would abate.  See Tegan S. v. Saul, 546 F. Supp. 3d 162, 168 (D.R.I. 2021) (remand required if ALJ's decision is based on administrative medical findings of state-agency physicians who were not privy to parts of medical record that detract from weight that can be afforded their opinions).  By way of just one example, none of the non-examining experts saw the June 2019 treating records for Dr. Tverskaya and the gastroenterologist that reflect ongoing epigastric pain, a distended abdomen, difficulty with memory and sleeping, back pain, restricted range of motion, spinal tenderness and depression.  Tr. 1208-13, 1233; see Tr. 1208 ("everything hurts").  Nor did they see Dr. Tverskaya's June 2019 opinion; nor were they aware of the Mariorenzi or BSNI records, which reflect a diagnosis of continuing back and bilateral leg pain despite conservative treatment,

exacerbated by activity, with antalgic gait and occasional urinary incontinence episodes that had been "ongoing for several years." Tr. 1262; <u>see</u> Tr. 1239-40, 1243, 1260-62. Because these sources opined based on review of a materially incomplete record, it is error for the ALJ to rely on them to formulate the pre-November 12, 2019, RFC. This error leaves the RFC lacking the support of substantial evidence and is not cured by the ALJ's decision to call a testifying medical expert because Dr. Efobi did not consider this evidence. See <u>Virgen C. v. Berryhill</u>, C.A. No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018) (when testifying medical expert looked at incomplete record, his opinion cannot be used to fill gap in state-agency-physicians' review).

Similarly lacking evidentiary support is the ALJ's determination that "the claimant's back impairment has worsened" as of November 12, 2019, so as to materially increase the degree to which it caused Plaintiff to be distracted. Tr. 28. This finding clashes with Dr. Mariorenzi's finding on examination on November 12, 2019, that "compared to the last exam, today he is much <u>less</u> hyperesthetic to light touch." Tr. 1237 (emphasis supplied). It also clashes with Dr. Tverskaya's opinions from June 2019 and February 2021, which reflect that Plaintiff incrementally <u>improved</u> over the period between them. <u>Compare</u> Tr. 1228-29, <u>with</u> Tr. 1274-75. And it clashes with Dr. Cerbo's opinion, based on his clinical examination in October 2018, that "[Plaintiff] becomes easily frustrated, irritable and agitated due to his pain and mood, which caused him to prematurely terminate the task." Tr. 1144. What the evidence actually reflects is that, throughout the period in issue Dr. Tverskaya found that Plaintiff's "on & off" back pain (as well as his abdominal pain) was <u>consistently</u> problematic and that, from as early as June 2018, she was trying to find a neurosurgeon or orthopedist to whom Plaintiff could go for specialized treatment to address

25

his spinal issues.  That is, the evidence reflects that the severity of Plaintiff's pre-existing and ongoing chronic back pain was finally <u>confirmed</u> on November 12, 2019, when he was seen for the second time, following a trial of conservative care, by the specialist that Dr. Tverskaya had been trying to arrange for since June 2018.  Based on my review of the record, I find that Plaintiff is right – this record does not reflect a diagnosis of exacerbation to support the ALJ's selection of November 12, 2019, as the EOD.  Thus, the ALJ's determination is not based on substantial evidence but rather seems erroneously "spun from gossamer based on [the ALJ's] lay interpretation of the evidence."  <u>Robert E. v. Saul</u>, C.A. No. 19-628WES, 2020 WL 3867288, at *6 (D.R.I. July 9, 2020), <u>adopted</u>, 2020 WL 4431595 (D.R.I. July 31, 2020).

The last error to which Plaintiff points is the skimpiness of the ALJ's rationale for discounting the credibility of his statements regarding the severity of his symptoms.  <u>See</u> Tr. 23-24.  Citing <u>Jacqueline V.</u>, 2023 WL 371976, Plaintiff argues that this is a case where "the absence of evidence that directly rebuts the claimant's testimony or presents some other reason to question its credibility [requires] the ALJ [to] take the claimant's statements as true."  <u>Id.</u> at *4.  I agree.

The ALJ's principal explanation for discounting Plaintiff's statements rests on an arguable discrepancy between Plaintiff's testimony, as characterized by the ALJ, that the pain is "constant," which the ALJ contrasts to Dr. Tverskaya's opinion that the pain was "on & off."  Tr. 23.  However, the ALJ misstates Plaintiff's testimony.  Plaintiff's actual words in describing the pain are: "[a]ll days right now for me are the same days," Tr. 56, while Dr. Tverskaya opined that he has had "low back pain, sharp, moderate, on & off, worse [with] movement/lifting."  Tr. 1227; <u>see</u> Tr. 1273.  Mindful of the language barrier and the chaotic

26

atmosphere during the hearing, as well as the claimant's use of the phrase "right now," I find that these are not materially inconsistent.  Also flawed is the ALJ's other reason for discounting Plaintiff's subjective statements – that for appointments with Dr. Tverskaya during much of 2018, Plaintiff did not complain of back pain.  In fact, at four of the seven 2018 appointments, Plaintiff <u>did</u> complain to Dr. Tverskaya of back pain.  <u>See</u> Tr. 769 (January 2018 – "Cont back, ribs pain, moderate, sharp, worse with movements, uses chest brace, can not sit or stand more that 10-15 min 2/2/ pain"); Tr. 780 (February 2018 – "Still severe ribs pain, low, mid and upper back pain, also his wife states he has prob[l]ems with urination."); Tr. 1071 (July 2018 – "Still feels tired, c/o abdominal pain, low back pain, on&off"); Tr. 1082 (August 2018 – "Still c/o low and upper back pain"); <u>see</u> Tr. 1103 (December 2018 – CT scan of thoracic spine results in advisory that patient consult with neurosurgeon).  And, while it is true that at three 2018 appointments back pain was not mentioned, two of these were for treatment of a skin rash, while at one Plaintiff focused only on gastrointestinal pain.  Tr. 1146-52, 1158-64 (September/October 2018 – at appointments to treat rash, no reference to back pain); Tr. 1169 (November 2018 – "Feels tired, cont R[ight]U[pper]Q[uadrant] pain, on&off"); <u>see</u> Tr. 1188 (December 2018 – "has intermittent epigastric pain almost daily").  Based on these flaws in the ALJ's approach to Plaintiff's subjective statements, I find that the ALJ's rejection of them is tainted by error, as well as that there is no substantial evidence of record that directly rebuts them.

Collectively these deficiencies are sufficient to require that this matter be remanded. The remaining question for the Court is whether the remand should be for an award of benefits or for further proceedings.  In considering this question, I am mindful that the law in this Circuit is clear that remand to award benefits "is rarely appropriate" except in

extraordinary circumstances, <u>Lagasse v. Berryhill</u>, Civil No. 17-cv-212-JD, 2018 WL 1871454, at *5 (D.N.H. Apr. 18, 2018), but am also mindful of the tortured travel of this case and that the Court's role is to ensure a just outcome, <u>Mary K.</u>, 317 F. Supp. 3d at 667. Ultimately, my recommendation is guided by <u>Sacilowski</u>, which holds that, when a longtime treating physician's opinion and the claimant's subjective statements are consistent and unambiguously supportive of a finding of disability and are unrebutted by substantial evidence of record, all of which is the case here, the Court may remand for an award of benefits. 959 F.3d at 439-41 (remand for award of benefits affirmed because "record contains no evidence to directly contradict [claimant's] testimony about her ailments and their frequency and severity, nor the medical reports supporting them"). My recommendation is further grounded in the reality that this is a case where almost <u>every person associated with the processing of the claim who had direct contact with Plaintiff made a finding of disability</u>. That includes not only Dr. Tverskaya, the longtime treating physician who was unique among Plaintiff's providers in that she could communicate with Plaintiff in one of his languages of fluency, but also Dr. Louis Cerbo, the expert examining psychologist, and the first ALJ, as well as the second ALJ, albeit limited to the post-November 12, 2019, period, when he had direct contact with Plaintiff at the hearing. Only opinions formed by those who had no contact with Plaintiff – the non-examining experts and the Appeals Council judges – are consistent with the finding of not-disabled.[13] And all of these appear to have been erroneously based on limited "objective medical findings" in

---

[13] The only exception is the testifying medical expert, Dr. Efobi, who noted that there was evidence of pain, but testified, "my concern was the psychiatric." Tr. 76. Further, because this hearing was telephonic, Dr. Efobi could hear but did not observe Plaintiff.

disregard of the ongoing development of the record and Plaintiff's subjective complaints of pain and its consequences.  See Dianne D., 2019 WL 2521840, at *7.

Accordingly, I urge the District Court to find that the proof is very strong and that there is no contrary substantial evidence and direct that benefits be awarded for the period from December 9, 2017, through November 12, 2019.

## V.    Conclusion

Based on the foregoing, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) for an award of benefits be GRANTED and the Commissioner's Motion to Affirm her Decision (ECF No. 13) be DENIED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 29, 2023